WATERFORD SCHOOL DISTRICT v STATE BOARD OF
EDUCATION (AFTER REMAND)

Docket No. 63788. Submitted January 12, 1983, at Detroit.—Decided
November 22, 1983. Leave to appeal applied for.

The State Board of Education and the State Treasurer reduced
the amount of state aid for education to the Waterford School
District for the fiscal year 1979-1980, pursuant to a 1979
statutory school aid formula. The Waterford School District
and its individual school board members, each in their capacity
as school board members and as taxpayers, brought an action
for a declaratory judgment, an injunction and mandamus
against the State Board of Education and the State Treasurer,
alleging that the defendants were prohibited by the so-called
Headlee Amendment to the Michigan Constitution from reduc-
ing the ratio of state aid to schools from that proportion in
existence in the fiscal year 1978-79. The Oakland Circuit Court,
Steven N. Andrews, J., granted accelerated judgment in favor
of the defendants, holding that the Court of Appeals had
exclusive jurisdiction of both a taxpayer's suit and an action for
mandamus against a state officer. Plaintiffs appealed. The
Court of Appeals reversed and remanded for further proceed-
ings. 98 Mich App 658 (1980). The Supreme Court denied leave
to appeal. 409 Mich 934 (1980). On remand, plaintiffs filed an
amended complaint. Defendants moved for summary judgment
on the basis that plaintiffs failed to state a cause of action upon
which relief could be granted. Steven N. Andrews, J., granted
defendants' motion for summary judgment. Plaintiffs appeal.
*Held:*

1. The broad concept of "education" is too indefinite to be
considered an existing activity or service required of school
districts by state law within the meaning of the Headlee
Amendment.

2. Only those specific and identifiable programs which the

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 68 Am Jur 2d, Schools §§ 14, 15.
[3-6] 68 Am Jur 2d, Schools §§ 85, 91 *et seq.*
[7] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[8] 73 Am Jur 2d, Statutes §§ 145, 146, 194.
[9] 68 Am Jur 2d, Schools § 92.

state requires school districts to provide by state statute or state agency regulation fall within the state financing requirements of the Headlee Amendment.

3. The "necessary costs" of a required service or activity are those costs which are essential to the completion of the intended purpose of the state-mandated activity, and they must be determined on a statewide basis, computed according to the actual cost to the state, were it to provide the required activitiy or service.

4. The state is not required to maintain the level of unrestricted state school aid which was present at the time the Headlee Amendment became effective.

5. The state is required to maintain the level of funding of categorical aid for the necessary costs of programs required of school districts by state statute or state agency regulation that existed at the time the Headlee Amendment became effective.

6. Since plaintiffs' equal protection issue was not raised in their complaint, the issue is not properly before the Court of Appeals. In any event, that issue appears to be without merit.

7. The trial court properly held that the state school aid allocation is based upon the operating millage actually levied by the school district rather than on the operating millage which is authorized.

Affirmed.

1. CONSTITUTIONAL LAW — HEADLEE AMENDMENT — SCHOOLS.

The fact that the state has delegated to local school districts its constitutional duty to provide education does not result in the conclusion that all functions performed by a school district are required by state law within the meaning of the Headlee Amendment.

2. CONSTITUTIONAL LAW — HEADLEE AMENDMENT — SCHOOLS — EDUCATION.

The broad concept of "education" is too indefinite to be considered an existing activity or service required of school districts by state law within the meaning of the Headlee Amendment to the Michigan Constitution (Const 1963, art 9, § 29).

3. CONSTITUTIONAL LAW — HEADLEE AMENDMENT — SCHOOLS.

Only those specific and identifiable programs which the state requires school districts to provide by state statute or state agency regulation fall within the state financing requirements of the Headlee Amendment to the Michigan Constitution (Const 1963, art 9, § 29).

4. Schools — State Aid — Required Services or Activities — "Necessary Costs".

The "necessary costs" of a required service or activity of a school district are those costs which are essential to the completion of the intended purpose of the state-mandated activity, and they must be determined on a statewide basis, computed according to the actual cost to the state were it to provide the required activity or service.

5. Constitutional Law — Schools — State Aid — Unrestricted Aid.

The state is not required to maintain the level of unrestricted state school aid which was present at the time the Headlee Amendment became effective (Const 1963, art 9, § 29).

6. Constitutional Law — Schools — State Aid — Categorical Aid.

The state is required to maintain the level of funding of categorical aid for the necessary costs of programs required of school districts by state statute or state agency regulation that existed at the time the Headlee Amendment to the Michigan Constitution became effective (Const 1963, art 9, § 29).

7. Appeal — Preserving Question.

The Court of Appeals will not review arguments raised for the first time on appeal.

8. Appeal — Judicial Construction.

The Court of Appeals is governed by traditional rules of statutory construction; if a statute is unambiguous on its face, further interpretation or construction will be avoided, but it is the duty of the Court to give effect to the legislative intent upon enactment where ambiguity exists.

9. Schools — School Operating Expenses — State Aid — Judicial Construction.

The statutory provision defining the method for computing the state allocation of school aid unambiguously uses in the allocation formula the millage levied by the local school districts for operating expenses rather than the millage authorized for operating expenses (MCL 388.1621[1]; MSA 15.1919[921][1]).

*Bruce T. Leitman* and *William G. Wolfram,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Gerald F. Young* and *James E. Riley,* Assistants Attorney General, for defendants.

Amici Curiae:

*Hiller, Larky & Hoekenga* (by *Daniel J. Hoekenga* and *Gregory J. Bator),* for the Michigan Education Association, Waterford Education Association and Michigan Education Support Personnel Association.

## AFTER REMAND

Before: BEASLEY, P.J., and M. J. KELLY and N. J. LAMBROS,* JJ.

PER CURIAM. In a complaint filed on March 7, 1980, plaintiffs alleged that a reduction in the amount of per pupil state aid to the Waterford School District (located primarily in Waterford Township, Oakland County) violated the so-called Headlee Amendment to the Michigan Constitution.[1] In April, 1980, the trial court granted accelerated judgment for defendants pursuant to GCR 1963, 116.1, subds (2), (3), on the ground that the Court of Appeals possessed exclusive subject matter jurisdiction over cases involving the Headlee Amendment. Plaintiffs appealed as of right and this Court reversed and remanded for further proceedings.[2]

On remand, both plaintiffs and defendants filed motions for summary judgment, which were denied by the trial court. In July, 1981, plaintiffs

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Const 1963, art 9, §§ 25-34.

[2] *Waterford School Dist v State Bd of Ed,* 98 Mich App 658; 296 NW2d 328 (1980), *lv den* 409 Mich 934 (1980).

filed an amended complaint to which defendants filed their answer. After a hearing, the trial judge filed a 31-page opinion granting summary judgment to defendants for failure to state a claim upon which relief could be granted.[3] Plaintiffs appeal the order as of right.

This litigation is the result of a reduction in state funding to the Waterford School District. Defendants, pursuant to the school aid formula found in MCL 388.1621(1); MSA 15.1919(921)(1), reduced state aid for education in the school district from $660.27 per pupil in fiscal year 1978-1979 to $614.18 per pupil in fiscal year 1979-1980.[4] Further reductions allegedly occurred in fiscal years 1980-1981 and 1981-1982.

On appeal, plaintiffs raise five basic issues, the first three of which involve construction of the Headlee Amendment, Const 1963, art 9, §§ 25-34. They are: (1) whether art 9, § 25 created substantive rights and duties; (2) whether art 9, § 29, prohibiting the state from reducing its financial proportion of the necessary costs of any existing activity or service required of local government units by state law, refers to all activities or services appropriate to providing public education; (3) whether art 9, § 30 requires the state to allocate a fixed percentage of its budget to public school districts; (4) whether the current funding of public education violates equal protection of the law; and (5) whether the trial court erred in refusing to grant plaintiffs' request for equitable relief.

---

[3] GCR 1963, 117.2(1).

[4] Defendants' figures, $663.53 in 1978-79 and $614.19 in 1979-80, differ slightly from those cited here, which are taken from the trial judge's findings of fact. However, these findings are not challenged as clearly erroneous on appeal, and their primary significance is to illustrate what all parties agree occurred: a reduction in the amount of state aid.

The central issue, as correctly stated by the trial judge in his comprehensive opinion, is whether the school aid formula, as applied, violates the Headlee Amendment's prohibitions against shifting the tax burden to local government by reducing the proportion of state spending in the form of aid to local units of governments or by reducing the state financed proportion of necessary costs of activities required of local units of government.

At trial, plaintiffs contended that it does and requested injunctive and mandamus relief for the allegedly irreparable, continuing damage to the district, its schools and its students. The trial court denied plaintiffs' request.

The impact of the Headlee Amendment on state aid to a school district was also at issue in *Durant v Dep't of Education (On Remand),*[5] recently decided by this Court. In that case, plaintiffs petitioned this Court for a writ of mandamus, seeking to compel the defendants to fund the Fitzgerald Public Schools in the same proportion as those schools were funded in fiscal year 1978-1979, pursuant to the Headlee Amendment. Mandamus was denied, as plaintiffs had not exhausted their administrative remedies prior to seeking a judicial remedy.[6] The Supreme Court reversed and remanded for consideration on the merits,[7] and, on remand, plaintiffs' complaint was again dismissed.[8]

Resolution of plaintiffs' first three issues rests on interpretation of the Headlee Amendment. In *Durant (On Remand), supra,* a case of first impression, this Court addressed the amendment's effect on state financed school aid.

---

[5] 129 Mich App 517; 342 NW2d 591 (1983).

[6] See *Durant v Dep't of Education,* 110 Mich App 351; 313 NW2d 571 (1981).

[7] *Durant v Dep't of Education,* 413 Mich 862; 317 NW2d 854 (1982).

[8] *Durant v Dep't of Education (On Remand), supra.*

Plaintiffs in the within case first contend that § 25 of the amendment creates specific rights and duties. Const 1963, art 9, § 25 provides:

"Property taxes and other local taxes and state taxation and spending may not be increased above the limitations specified herein without direct voter approval. The state is prohibited from requiring any new or expanded activities by local governments without full state financing, from reducing the proportion of state spending in the form of aid to local governments, or from shifting the tax burden to local government. A provision for emergency conditions is established and the repayment of voter approved bonded indebtedness is guaranteed. Implementation of this section is specified in Sections 26 through 34, inclusive, of this Article."

The trial court correcty found that § 25 was an introductory paragraph to the amendment which, by its very language, indicates that its substantive implementation is specified in the sections of the statute which follow. It is §§ 29 and 30 which detail the prohibition against shifting the tax burden to local government. There is no indication that these introductory sentences are to be given the substantive effect of creating specific rights and duties.

Section 29 states:

"The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of

this section shall not apply to costs incurred pursuant to Article VI, Section 18."

Section 30 states:

"The proportion of total state spending paid to all units of Local Government, taken as a group, shall not be reduced below that proportion in effect in fiscal year 1978-79."

Plaintiffs contend that § 29 refers to all activities or services provided by a local school board that are appropriate to its constitutionally required duty to provide meaningful education.

This Court held to the contrary in *Durant (On Remand), supra,* stating:

"[T]he fact that the state has delegated to local school districts its constitutional duty to provide education does not result in the conclusion that all functions performed by a school district are required by state law within the meaning of the Headlee Amendment."[9]

In *Durant (On Remand),* this Court found that the term "state law" as used in § 29 refers only to state statutes and state agency regulations which require school districts to provide a few specific and identifiable services and activities.[10] The Court held that the remainder of the school day is filled with programs that are completely a matter of local discretion, and stated:

"We hold that such discretionary programs do not fall within the purview of § 29 of the Headlee Amendment because they are not specifically mandated by the state Legislature or a state agency. It would certainly be unreasonable to hold that a local school board may

---

[9] 129 Mich App 524.

[10] 129 Mich App 526.

unilaterally determine what activities or services encompass 'education' and then under § 29 of the Headlee Amendment require the state, *i.e.,* all the taxpayers, to help defray the costs of those programs merely because the school district is performing a delegated duty of providing education to its students. We do not think that the drafters of § 29 or the voters who ratified it intended it to be applied in such a manner. Thus, although the state may be constitutionally required to provide an educational program, and although the school districts may have a delegated duty to provide such a program, we conclude that the broad concept of 'education' is too indefinite to be considered an existing activity or service required of school districts by state law within the meaning of § 29 of the Headlee Amendment. Only those specific and identifiable programs which the state requires the school districts to provide by state statute or state agency regulation fall within the state financing requirements of § 29."[11]

The Court further held that:

"[T]he 'necessary costs' of a required service or activity are those costs which are essential to the completion of the intended purpose of the state-mandated activity, and they must be determined on a statewide basis, computed according to the actual cost to the state, were it to provide the required activity or service; * * * the state is not required to maintain the level of unrestricted state school aid which was present at the time § 29 became effective; and * * * the state is required to maintain the level of funding of categorical aid for the necessary costs of programs required of school districts by state statute or state agency regulation that existed at the time § 29 became effective."[12]

The first three questions raised by plaintiffs have, therefore, been resolved by this Court's opinion in *Durant (On Remand), supra.*

---

[11] 129 Mich App 527-528.

[12] 129 Mich App 533-534.

Plaintiffs' fourth assertion is that the current funding of public education violates equal protection of the law. This issue was not raised in their complaint, and so is not properly before this Court on appeal.[13] In any event, the issue appears to be without merit.[14]

Plaintiffs' final argument that the trial court erred in refusing to grant plaintiffs' request for equitable relief is similarly without merit. Plaintiffs contend that the trial court erred in refusing to interpret the phrase "for each mill of operating tax *levied*" to mean "for each mill of operating tax *authorized*".[15]

In construing statutes, this Court is governed by the traditional rules of construction.[16] If a statute is unambiguous on its face, this Court will avoid further interpretation or construction of its terms.[17] Here, the statute under scrutiny is absolutely unambiguous. It states that a district's allocation of school aid per pupil is guaranteed to be a gross allowance plus a sum of each mill of operating tax levied. This statute has been amended after ratification of the Headlee Amendment without alteration of the requirement to compute the amount of guaranteed school aid based on each mill of operating tax levied. Faced with such an unambiguous statutory requirement, the trial court correctly refused to construe "levied" to mean "authorized". Moreover, as the trial court noted, the proposed construction would result in a

---

[13] *Avon Twp v State Boundary Comm,* 96 Mich App 736, 752-753; 293 NW2d 691 (1980), *lv den* 410 Mich 853 (1981).

[14] See, *San Antonio Independent School Dist v Rodriguez,* 411 US 1; 93 S Ct 1278; 36 L Ed 2d 16 (1973).

[15] MCL 388.1621; MSA 15.1919(921).

[16] *Pittsfield Twp v City of Saline,* 103 Mich App 99, 104; 302 NW2d 608 (1981).

[17] *Id.*

windfall to the district experiencing a millage rollback under the Headlee Amendment, as the loss in school aid would ultimately be recouped from state-wide taxpayers.

As the trial judge stated:

"Plaintiffs' remedy, if any is warranted, is with the legislature, not with this Court. The taxpayers have expressed their opinion as to the financial needs of plaintiff school district and the defendants, under the current state aid system, have provided the school district all that is legally permissible. The real cause of any financial hardship was the loss of over one million dollars per year in local revenues due to the operation of the Headlee Amendment to the Michigan Constitution, an event the defendants had no control over. The taxpayers who benefited from the rollback cannot, in fairness to all, be treated any differently than the other taxpayers of the state."

We affirm the trial court's order granting summary judgment.